**In re Art HARRIS, Relator.**

**No. 01–09–00771–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 1, 2010.

Rehearing Overruled Aug. 6, 2010.

Amanda L. Bush, Charles L. Babcock, Nancy Hamilton, Jackson Walker, LLP, Houston, TX, for Relator.

Bonnie Stern, Beverly Hills, Ca, Diana E. Marshall, Marshall & Lewis, LLP, Harry Paul Susman, Richard Wolf Hess, Susman Godfrey LLP, Michael Meyer, Neil C. McCabe, The O'Quinn Law Firm, Lyndal Harrington, Houston, TX, Keith Miles Aurzada, Walter A. Herring, Bryan Cave, L.L.P., Dallas, TX, L. Lin Wood, Luke A. Lantta, Bryan Cave, LLP, Atlanta, GA, Teresa Stephens, North Richland Hills, TX, Nelda Turner, Gladewater, TX, for Real Party in Interest.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION ON REHEARING

EVELYN V. KEYES, Justice.

On April 22, 2010, a panel of this Court conditionally granted relator Art Harris's petition for writ of mandamus. Real party in interest Virgie Arthur filed a motion for rehearing on May 5, 2010. We deny Arthur's motion for rehearing, but we withdraw our April 22, 2010 opinion and issue this opinion in its place.

This is a petition for writ of mandamus filed by relator, Art Harris, requesting that we direct the trial court to withdraw discovery orders against Art Harris issued on January 27, 2009, May 11, 2009, and August 28, 2009.[1] In five issues, Harris argues that the trial court abused its discretion: (1) in ordering Harris to turn over "electronic media" for forensic examination when there was neither a pending request for production nor any request for production of documents with which he had not complied; (2) in ordering Harris to respond to the Special Master's questions and to assess usage and contents of other electronic media listed in the Special Master's August 17, 2009 email; (3) in refusing to apply Texas Rule of Civil Procedure 193.3 and other discovery procedures on the treatment of privileged documents and creation of privilege logs; (4) by failing to consider Rule 171 in appointing a special master to conduct forensic computer examinations; (5) by appointing a special master to investigate and inquire into patterns of discovery abuse, or, in the alternative, by failing to remove a special master who is acting outside the limitations and specifications stated in the order appointing him, including reading attorney-client communications.

## Background

On April 28, 2008, Virgie Arthur filed the underlying proceeding against Howard K. Stern, Bonnie Stern, Lyndal Harrington, Art Harris, Nelda Turner, Teresa Stephens, Larry Birkhead, Harvey Levin, and TMZ Productions, Inc., alleging that certain syndicated television broadcasts and internet publications defamed her and harmed her efforts to seek custody and visitation of her granddaughter, who is the child of Vickie Lynn Marshall, also known as Anna Nicole Smith. Art Harris is a correspondent for *Entertainment Tonight,* and Arthur alleges in her petition that he participated in defaming Arthur through internet postings, news articles, and an interview with a relative of Vickie Lynn Marshall's that was broadcast on *Entertainment Tonight* and that Harris conspired with Howard K. Stern, Marshall's former lawyer and companion, and others to defame Arthur.

---

1. The underlying lawsuit is *Virgie Arthur v. Howard K. Stern, Bonnie Stern, Lyndal Harrington, Art Harris, Nelda Turner, Teresa Stephens, Larry Birkhead, Harvy Levin, and TMZ Productions, Inc.,* No. 2008–24181, filed April 28, 2008 in the 280th District Court of Harris County Texas, Honorable Tony Lindsay presiding. After this petition for writ of mandamus was filed, Arthur joined CBS as a defendant.

On August 1, 2008, Arthur served Art Harris with her First Request for Production. The requests for production instructed Harris to "[p]roduce documents and tangible things in the forms as they are kept in the ordinary course of business" and to "[p]roduce electronically stored information in native format." The instructions in the request for production further stated that, for any electronically stored information, Harris should:

[P]roduce a discovery log that details the type of information, the source of information, the discovery request to which the information corresponds, and the information's electronic ID number.

[W]rite all of the electronically stored information to reasonably usable storage media, such as CD, DVD, or flash drive.

[I]dentify every source containing potentially responsive information that [Harris] is not searching for production [and,] [f]or any materials that [Harris] claims no longer exist or cannot be located, provide all of the following:

(1) A statement identifying the material.

(2) A statement of how and when the material passed out of existence of when it could no longer be located.

(3) The reasons for the material's nonexistence or loss.

(4) The identity, address, and job title of each person having knowledge about the nonexistence or loss of the material.

(5) The identity of any other materials evidencing the nonexistence or loss of the material or any facts about the nonexistence or loss.

Arthur's request for production number one requested that Harris "produce copies of all communications, including but not limited to email and other electronic communications, for the period September 2006 to present," between Harris and 38 listed email addresses. Arthur's request for production number two requested that Harris "[p]roduce all documentation of the identity and/or contact information" for the thirty-eight email addresses listed in request number one, including "website registration information, names, physical addresses, telephone numbers, email addresses, and IP addresses."

Request for production number three requested that Harris "[p]roduce copies of all communications, including but not limited to email and other electronic communications, for the period September 2006 to the present, between you and the following or about the following." The request then listed thirty-nine individuals or entities related to Arthur's claims against Harris and the other defendants in the case, including several parties' attorneys.

At this time Harris, Bonnie Stern, Lyndal Harrington, and Nelda "Rose" Turner were all represented by attorney William Ogden. On August 28, 2008, Harris served Arthur with his objections and responses to Arthur's document requests. Harris objected to the requested discovery based on a qualified privilege due to his status as a professional journalist, arguing that "[t]he qualified journalist privilege . . . arises as a matter of common law and constitutional law." Harris "invoke[d] the privilege and request[ed] a protective order against the production of material obtained in newsgathering." Harris also objected to the requests as "unreasonably overbroad, prohibitively expensive, and unduly burdensome" under Texas Rule of Civil Procedure 192.4(a) and argued that "the burden and expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the party's resources and the issues at stake in the litigation," citing Texas Rule of Civil Procedure 192.4(b). Finally, he objected that the requests constituted "an unrea-

sonable and unwarranted invasion of personal privacy."

On October 12, 2008, Arthur filed a motion to compel, arguing that Harris and the other defendants represented by Ogden had failed to produce relevant documents. Ogden responded on behalf of all four defendants, and a hearing was held on November 21, 2008. On December 4, 2008, Harris produced more than 300 pages of documents.[2]

On December 8, 2008, Arthur filed her Second Motion to Compel Responses to Requests for Production from Defendant Bonnie Stern. The motion stated that Arthur had served Bonnie Stern with requests for production but had not received any responsive documents from her, and it requested that the trial court compel Bonnie Stern to produce the requested documents and order her to "make her computer hard drive available to [Arthur] for forensic examination and capture of information."

On December 11, 2008, the trial court held another hearing on the discovery disputes. Arthur's counsel represented that Arthur had motions on discovery disputes pending for Bonnie Stern, Art Harris, Lyndal Harrington, and Rose Turner. Ogden appeared as counsel for Harris, Bonnie Stern, Lyndal Harrington, and Rose Turner. Arthur's counsel requested production of Bonnie Stern's hard drive at the hearing, arguing spoliation of the evidence based on some emails that were produced from another source. The following exchange occurred:

[Trial Court]: Okay. So your request for production does not include her [Bonnie Stern's] hard drive but that's what you're asking for right now. Is that right?

[Arthur]: Yes, Your Honor.

[Ogden]: We have never been served with the request, discovery request to produce her hard drive which we would oppose.

. . . .

[Trial Court]: [P]rocedurally it seems to me a little off track for—

[Arthur]: Your Honor, it's not exactly true that we haven't ever requested access to the hard drive. We contacted Mr. Ogden and the other defendants earlier in the litigation and suggested to them that the way to go, given the experts I've talked to, is to have the Court—apply to the Court for the appointment of an independent computer forensic examiner, a master. Under the rules that can be done and that person, the neutral, can examine the hard drive that needs to be examined. . . .

. . . .

[Trial Court]: Okay. Since we all actually know what he wants, do we really care if he files a formal request or do

---

**2.** It is unclear when the trial court ruled on Arthur's October 12, 2008 motion. There was no written order immediately following the November 21, 2008 hearing, nor was there a transcript of the hearing. However, Arthur's second motion to compel discovery from Bonnie Stern states that the trial court granted the motion to compel on November 21, 2008 and that Arthur subsequently received a packet containing some documents from Turner and Harris. Harris represents that the second motion to compel discovery from Bonnie Stern was the only discovery motion pending at the time the trial court issued its January 27, 2009 order compelling discovery; however, at the December 11, 2008 hearing, Arthur's counsel represented that discovery requests were still pending against Harris and other defendants. During oral argument, counsel for Arthur acknowledged that there was no motion to compel production pending against Harris at the time of the trial court's January 27, 2009 order.

we just decide to rule on the request and save a hearing?

[Ogden]: I do care because I don't think it's appropriate for anyone to go—

. . . .

[Trial Court]: I understand that you object to producing the hard drive and to having somebody fish through it.

[Ogden]: Correct.

[Trial Court]: But do you object to having the Court rule one way or the other on it today even though there's no actual written request for production for that?

[Ogden]: I do respectfully because I'd like the opportunity to brief that and file a response.

After discussing the relationship between Arthur's claims against Bonnie Stern and her brother, Howard K. Stern, Arthur's counsel stated that he would "file a motion this afternoon for an independent forensic examiner."[3] The trial court asked if the request was "[f]or both computers or just Bonnie's?" Arthur's counsel responded:

I think the—it would probably be best to proceed step by step; that is, to see if the Court would approve for Bonnie the appointment of the forensic computer examiner. If we need to utilize his or her services more down the road, then the order could be amended to do that.

I suspect we will have to because Teresa Stephens, who was very much involved in this conspiracy . . . has written the Court and has informed this counsel that all of her e-mails were on a[n] external server and they all disappeared while her computer was locked up in a back vault. That's not to suggest that our discovery dispute with Rose Turner is over because we would at some point probably want to approach the Court and say that she has a lot

more that we've requested other than the emails that she's produced that she should produce.

Ogden left the hearing to call Bonnie Stern in order to consult with her regarding production of her hard drive to a forensic examiner. On returning to the hearing, Ogden stated that Bonnie Stern agreed to produce her hard drive to a forensic examiner to "look for and copy any emails or exchanges between the 40 web addresses and email addresses that are listed in the request for production," provided that her bookkeeping business records would not be interfered with. The trial court stated that she could limit the order so that her unrelated business would not be examined, and Ogden replied, "That sounds perfect."

The parties then discussed whether Ogden's other clients, including Harris, would submit to forensic examination of their computers. Ogden stated on the record that he was not able to reach them, and the following exchange occurred:

[Trial Court]: All right. Well, we'll go back then to the notion that I'm granting the motion to compel as to one and three with regard to each of those and you all can either do it the unagreed way or the more or less agreed way after you get out of here.

[Ogden]: I'm not sure what the unagreed way is but I will—

[Trial Court]: The unagreed way is she just has to turn it over—or they, whoever they are, just have to turn it over.

[Ogden]: They—they have—they've done that to the extent they can.

[Trial Court]: No, I'm ordering the whole thing, not just what you chose to produce.

3. The record does not contain a motion for appointment of a forensic examiner.

[Ogden]: When you say "turn it over," you mean hand [Arthur's counsel] their computer—

[Trial Court]: No.... I mean that as to Request for Productions [sic] 1 and 3, it's granted. Produce.

[Ogden]: So they can—they can print those off and deliver the printed copies?

[Trial Court]: Right.... Or you can agree after you get out of here and get a chance to talk to them for what we are doing with Ms. Bonnie Stern's computer.

The trial court then informed the parties that it was their responsibility to select an examiner.

Over the following weeks, Ogden and Arthur's counsel communicated regarding the selection of the forensic examiner. Ogden suggested Craig Ball, along with several other candidates, and the parties eventually selected Craig Ball. On December 17, 2008, Arthur's counsel stated in an email that he had been informed that Turner and Harrington also desired to have their computers examined by Craig Ball, and he asked "What is Art Harris's position?" Ogden's co-counsel responded that Harris had opted to produce non-privileged documents rather than agree to the independent forensic examination.

On January 2, 2009, Ogden and his firm filed an unopposed motion to withdraw as attorney for all four defendants, including Harris. On January 5, 2009, Ogden confirmed in an email that Ball was acceptable as a candidate for independent forensic examiner and stated generally in a letter that "Defendants agree to using Craig Ball as the independent forensic examiner. You may file this agreement with the Court pursuant to [Texas Rule of Civil Procedure] 11." On January 20, 2009, Arthur's counsel filed the letter from Ogden in the trial court as a Rule 11 agreement.

On January 21, 2009, the trial court granted Ogden's motion to withdraw as counsel.

On January 27, 2009, the trial court entered an "Order Compelling Production and Appointing Independent Computer Forensic Examiner," which ordered Harris to "produce the documents requested by [Arthur] in her Requests for Production Nos. 1 and 3 for the period of September 20, 2006 through March 14, 2008" and appointed Craig Ball as a "Special Master under the terms and conditions of the Consulting Agreement attached to this Order ... to conduct an independent forensic examination of the relevant computer hard drives [including Harris's], external hard drives, jump drives, and other such repositories of electronic communications in the possession or control of ... ART HARRIS ... for the purpose of locating documents responsive to Plaintiff's Request for Production."[4]

---

4. The order stated:

On December 11, 2008, this Court heard Plaintiff's Motion to Compel Responses to Requests for Production from Defendants BONNIE STERN, ART HARRIS, AND LYNDAL HARRINGTON and determined that the motion should be granted in part and denied in part. It is therefore

ORDERED, ADJUDGED and DECREED that:

(1) Defendants BONNIE STERN, ART HARRIS, AND LYNDAL HARRINGTON shall produce the documents requested by plaintiff in her Requests for Production Nos. 1 and 3 for the period of September 20, 2006 through March 14, 2008.

(2) At the present time, Defendants BONNIE STERN, ART HARRIS, AND LYNDAL HARRINGTON are not compelled to produce the documents requested by Plaintiff in her Request for Production No. 2.

(3) To facilitate production of these documents, the Court hereby appoints Craig Ball, of Austin, Texas, as a Special Master, under the terms and conditions contained in the Consulting Agreement attached to this Order

Attached to this January 27, 2009 order was a consulting agreement, effective December 18, 2008, between Arthur's counsel's firm and Craig Ball. It identified the firm as "the Client" and stated that the client "desires to engage Ball as a court-appointed neutral computer forensics examiner in Cause No. 2008–24181 in the 280th Judicial District Court of Harris County, Texas on the terms and conditions set forth herein." It further specifies that

> Ball is an independent contractor who will serve as the duly-appointed neutral agent of the Court and is not an employee or agent of Client. Ball does not serve as legal counsel to those Client serves.... The obligation to compensate and reimburse Ball timely and fully under this Agreement is not contingent upon the outcome of any claim or action,

upon collection of monies from third parties or upon the opinions of testimony that Ball may offer.

On February 2, 2009, Harris's new counsel filed a notice of appearance. On February 3, 2009, Harris filed a motion to clarify the January 27, 2009 order compelling production and appointing the independent computer forensic examiner. A hearing was originally set for February 6, 2009, but was continued until May 8, 2009. At this hearing, Harris's new counsel argued that the trial court had improperly included Harris in the order requiring him to produce his computer and storage devices because Harris had not agreed to surrender his computer. The trial court responded, "It doesn't have to be an agreement. It wasn't an agreement. It was the Court's order and I think I said, All right.

> and incorporated herein as if fully set forth in this Order, to conduct an independent forensic examination of the relevant computer hard drives, external hard drives, jump drives, and other such repositories of electronic communications in the possession or control of Defendants BONNIE STERN, ART HARRIS, AND LYNDAL HARRINGTON, for the purpose of locating documents responsive to Plaintiff's Request for Production. The Special Master shall have discretion to employ or to modify search terms, and he is specifically instructed to:
> a. exclude from production email communications between Stern family members that are of a purely personal nature;
> b. exclude from production any files or communications relating solely to Ms. Stern's accounting business, or other unrelated businesses of Ms. Stern;
> c. capture electronic communications, including but not limited to e-mails, to or from DEFENDANT HOWARD K. STERN'S attorneys, which consist of the law firm of Bryan Cave/Powell Goldstein and its employees, former employees and partners, including but not limited to L. Lin Wood, Nicole J. Wade, John C. Patton, Luke Lantta, Ben Erwin, and B. Lyle, and the Law Offices of Eric Sauerberg, and its employees and partners including but not limited to M. Krista

> Barth, and segregate them in order for the law firm to review and assert any claim of privilege prior to production;
> d. capture all remaining electronic communications, including but not limited to emails to or from the persons, entities and email addresses listed in parts 1 and 3 of Plaintiff's Requests for Production, and submit them to Defendants BONNIE STERN, ART HARRIS, AND LYNDAL HARRINGTON for privilege review prior to production;
> (4) Within 14 days after receipt of the captured documents from Special Master, the law firm of Bryan Cave/Powell Goldstein, and Defendants BONNIE STERN, ART HARRIS, AND LYNDAL HARRINGTON shall produce a privilege log and submit it, along with the captured documents, to the Court for in camera inspection.
> (5) To facilitate the work of the Special Master, this Court ORDERS Defendants BONNIE STERN, ART HARRIS, AND LYNDAL HARRINGTON, at their own expense, TO CONTACT THE SPECIAL MASTER AND TO DELIVER TO HIM THE RELEVANT MEDIA within 10 days of the signing of this order, under terms to be specified by him;
> (6) Other than as stated in part (5) above, the costs of the Special Master shall be carried by the Plaintiff, until such time as the Court may determine otherwise.

We're going to have this stuff from all of these people and I think they were all the subject of the hearing and I'm not quite sure what makes you think they weren't." Harris's counsel also addressed the case *In re Weekley Homes,*[5] which was then pending before the Texas Supreme Court, and argued that there were no requests for production of documents that they had not complied with.

On May 11, 2009, the trial court entered an order denying Harris's motion to clarify. The trial court ordered Harris to "produce the relevant computer hard drives, external hard drives and jump drives ("electronic media") to Special Master Craig Ball in accordance with the Order dated January 27, 2009 and the Consulting Agreement attached thereto, except as where other procedures are specified herein." The trial court ordered Harris

> to contact the Special Master and to deliver the electronic media to him on or before May 19, 2009 at noon, under the terms specified by the Special Master. Immediately upon completion of producing a forensically sound image of the hard drive or other electronic media, as defined in this order, Special Master Ball shall return the original electronic media and computer, if applicable, to Defendant Art Harris. The Special Master shall promptly capture and produce to Defendant Harris a copy of all documents as set out in the order of January 27, 2009.

This order gave Harris fourteen days from the date he received the captured documents to produce a privilege log to the Special Master "listing all documents submitted by Special Master Ball to Defen-

dant Art Harris, which Defendant Art Harris is withholding from Plaintiff and the reasons for withholding the documents from production," and it ordered that Ball "produce all documents not listed on the privilege log to [Arthur]" and "maintain for the remainder of this lawsuit the electronic media and documents listed on the privilege log." The trial court ordered that Arthur pay the costs of the Special Master. Harris then turned over electronic media to the special master, including a Dell desktop computer with an 80 GB hard drive, a Dell laptop computer with a 160 GB hard drive, and an external 200 GB hard drive.

The special master sent emails to Harris's counsel on August 7 and August 11 raising questions regarding Harris's replacement of his hard drive[6] and requesting that Harris give him more information and produce more electronic devices. The special master also sent other defendants emails regarding Harris's electronic media that were eventually posted on Nelda Turner's blog.

On August 14, 2009, Harris's counsel responded by letter to the emails requesting more information and answering the special master's questions regarding the alleged replacement of the hard drive. The special master was not satisfied with this explanation and again requested more information and production of more electronic media from Harris in a series of emails from August 17, 2009 to August 23, 2009.

On August 23, 2009, Harris filed a motion to reconsider the appointment of the special master and request for protective order and stay of appointment, arguing

---

**5.** *In re Weekley Homes,* 295 S.W.3d 309 (Tex. 2009) (orig. proceeding).

**6.** It appears that the forensic examination shows that Harris had his hard drive replaced

on December 16, 2008 or that there was some other evidence that he had deleted a large number of files.

that the appointment of Craig Ball as a special master was made in violation of the requirements of Texas Rule of Civil Procedure 171, that Harris was not properly a subject of the order compelling production of his hard drive to Ball, and that Ball acted outside the role of special master. Harris maintained that he had already produced more than three million pages of emails and that the trial court should "stay and terminate the role of the Special Master immediately." Harris also argued that Ball "has made sarcastic, editorial, and prejudicial comments about [Harris] regarding his date and his style of writing, as well as disclosing information gleaned from emails, some of which we believe were attorney-client communications."

The trial court held a hearing, and, on August 28, 2009, it signed an order denying Harris's motion to reconsider. The trial court ordered that Harris "shall within 14 days of this Order respond to Special Master Craig Ball's August 17, 2009 email inquiry and evaluate whether the electronic media mentioned in the email contains communications from the relevant time period." The trial court also ordered that Harris "shall not produce the electronic media referred to in Special Master Craig Ball's August 17, 2009 email at this time" but that "nothing shall be deleted or destroyed from Defendant Art Harris's electronic media referred to in Special Master Craig Ball's August 17, 2009 email inquiry." Finally, the trial court ordered that Harris "has until September 28, 2009, to produce a privilege log pertaining to the CD provided to [Harris's] counsel by Special Master Craig Ball on August 28, 2009, and submit it along with the captured documents to the Court for in-camera inspection."

Harris filed this petition for writ of mandamus on September 4, 2009. We granted his motion for emergency temporary relief suspending the trial court's enforcement of the three disputed orders.

## Standard of Review

Mandamus relief is appropriate only if a trial court abuses its discretion and no adequate appellate remedy exists. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex.2003). The heavy burden of establishing an abuse of discretion and an inadequate appellate remedy is on the party resisting discovery. *Id.* A trial court commits a clear abuse of discretion when its action is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996) (orig. proceeding)).

## Orders Compelling Discovery

In his first issue, Harris argues that the trial court abused its discretion by ordering him to turn over "electronic media" for forensic examination when there was neither a pending request for production nor any request for production of documents with which he had not complied, he had filed a motion for a protective order, and no motion to compel production was pending against him. In his third issue, he argues that the trial court erred in refusing to apply Texas Rule of Civil Procedure 193.3 and other discovery procedures on the treatment of privileged documents and creation of privilege logs. We address these issues together.

## A. Order to Turn Over Documents Without Pending Request for Production or Motion to Compel

Discovery in this case is governed by Texas Rules of Civil Procedure 192.3,

192.4, 193, and 196.4.[7] Rule 192.3 allows a party to "obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." TEX.R. CIV. P. 192.3(a). The comments to Rule 192 state, "While the scope of discovery is quite broad, it is nevertheless confined by the subject matter of the case and reasonable expectations of obtaining information that will aid resolution of the dispute." TEX.R. CIV. P. 192 cmt. 1; *see also CSX*, 124 S.W.3d at 152 ("Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution.").

■ Rule 192.4 imposes limitations on the scope of discovery. TEX.R. CIV. P. 192.4. It states:

The discovery methods permitted by these rules should be limited by the court if it determines, on motion or on its own initiative and on reasonable notice, that:

(a) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; or

(b) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Id.* Determinations regarding the scope of discovery are largely within the trial court's discretion. *In re Colonial Pipeline Co.,* 968 S.W.2d 938, 941 (Tex.1998) (citing *Dillard Dep't Stores, Inc. v. Hall,* 909 S.W.2d 491, 492 (Tex.1995) (orig. proceeding)). However, the discovery rules "explicitly encourage trial courts to limit discovery when 'the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *In re Alford Chevrolet–Geo,* 997 S.W.2d 173, 181 (Tex.1999) (orig. proceeding) (quoting TEX.R. CIV. P. 192.4(b)). "[A] discovery order that compels overly broad discovery 'well outside the bounds of proper discovery' is an abuse of discretion for which mandamus is the proper remedy." *Dillard,* 909 S.W.2d at 492 (quoting *Texaco, Inc. v. Sanderson,* 898 S.W.2d 813, 815 (Tex.1995) (orig. proceeding)).

■ Rule 193 "imposes a duty upon parties to make a complete response to written discovery based upon all information reasonably available, subject to objections and privileges." TEX.R. CIV. P. 193 cmt. 1. It permits a party to object to discovery as overbroad and to refuse to comply with it entirely. *Id.* at cmt. 2 (citing *Loftin v. Martin,* 776 S.W.2d 145 (Tex.1989) (orig. proceeding)). "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *CSX,* 124 S.W.3d at 153. "[D]iscovery may not be used as a fishing expedition or to impose unreasonable discovery expenses on the opposing party." *Alford Chevrolet–*

---

7. Rule of Civil Procedure 196.4 governs requests for production of "data or information that exists in electronic of magnetic form."

TEX.R. CIV P. 196.4. It is addressed in the next section.

*Geo,* 997 S.W.2d at 181 (citing *K Mart Corp. v. Sanderson,* 937 S.W.2d 429, 431 (Tex.1996) (orig. proceeding) (holding that not only must discovery requests be reasonably tailored to include only matters relevant to case, but discovery requests may not be used as fishing expedition or to impose unreasonable discovery expenses on opposing party)); *see also In re Am. Optical Corp.,* 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).

■ Here, Arthur requested all correspondence between Harris and a list of 38 other email addresses and people, some of whom were business associates and attorneys for parties to the litigation who were not alleged to have been co-conspirators to defame Arthur. Arthur's requests also delved into information potentially protected by Harris's privilege as a journalist.

After Arthur served her discovery requests on him, Harris responded by filing objections based on privilege as a journalist and scope. Harris objected to the requests as "unreasonably overbroad, prohibitively expensive, and unduly burdensome" under Texas Rule of Civil Procedure 192.4(a), and he argued that "the burden and expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the party's resources and the issues at stake in the litigation," citing Texas Rule of Civil Procedure 192.4(b). Finally, he objected that the requests constituted "an unreasonable and unwarranted invasion of personal privacy."

On October 12, 2008, Arthur filed her motion to compel production from Harris, and, following a hearing on November 21, 2008, Harris produced approximately 300 pages of emails and other documents that he determined were responsive to the discovery requests. Arthur made no further motion to compel discovery from Harris, and she never served Harris with any further discovery requests. At the December 11, 2008 discovery hearing held on Arthur's motion to compel discovery from Harris's co-defendant Bonnie Stern, Arthur made only limited references to Harris, and the trial court did not address any arguments or objections raised by Harris. Arthur never established that the scope of discovery requested from Harris was required for her to establish her claims of defamation and conspiracy. Nevertheless, following the hearing on Arthur's motion to compel production from Bonnie Stern, the court ordered Harris to turn over his computer hard drive, external drives, and jump drives to the court-appointed "Special Master" and forensic examiner, Craig Ball.

Harris's February 3, 2009 motion to clarify the January 27 order made it clear that Harris wished to reassert his previous objections that the discovery ordered by the trial court was overbroad, prohibitively expensive, and unduly burdensome. The trial court denied the motion.

■ Because Arthur did not file a motion to compel further discovery from Harris following the November 21, 2008 hearing, Harris had no opportunity to urge his objections and motion for a protective order prior to being ordered to produce the documents sought by Arthur. We hold that in compelling discovery from Harris without requiring Arthur to identify specific discovery requests with which Harris had not complied and without having before it a motion to compel discovery from Harris, the trial court acted arbitrarily and without considering the discovery rules. *See* Tex.R. Civ. P. 215.1, 215.2, 215.3; *In re Ford Motor Co.,* 165 S.W.3d 315, 317 (Tex. 2005) (holding that mandamus relief is available when trial court does not follow guiding rules and principles and reaches arbitrary and unreasonable decision). We further hold that the trial court abused its

discretion in ordering overbroad discovery and in failing to determine whether the documents sought by Arthur from Harris were privileged, as Harris claimed, or even whether they were relevant or reasonably calculated to lead to the discovery of evidence relevant to Arthur's claims. *See* Tex.R. Civ. P. 192.3 (stating that "a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action").

## B. Orders to Produce Electronic Media

Also in his first issue, Harris argues that the trial court abused its discretion by ordering him to produce his electronic media for computer forensic examination because Arthur had made no request for the electronic hardware and no showing that the benefits of production outweigh the costs as required by Rule 196.4. He cites *In re Weekley Homes* to support his argument.[8]

Rule 196.4 provides:

To obtain discovery of data or information that exists in electronic or magnetic form, the requesting party must specifically request production of electronic or magnetic data and specify the form in which the requesting party wants it produced. The responding party must produce the electronic or magnetic data that is responsive to the request and is reasonably available to the responding party in its ordinary course of business. If the responding party cannot—through reasonable efforts—retrieve the data or information requested or produce it in

the form requested, the responding party must state an objection complying with these rules. If the court orders the responding party to comply with the request, the court must also order that the requesting party pay the reasonable expenses of any extraordinary steps required to retrieve and produce the information.

Tex.R. Civ. P. 196.4.

In *Weekley Homes*, the Texas Supreme Court held that Rule 196.4 requires a specific request "to ensure that requests for electronic information are clearly understood and disputes avoided." 295 S.W.3d at 314. It set out the appropriate procedure for requesting electronic information under the rules:

When a specific request for electronic information has been lodged, Rule 196.4 requires the responding party to either produce responsive electronic information that is "reasonably available to the responding party in its ordinary course of business," or object on grounds that the information cannot through reasonable efforts be retrieved or produced in the form requested. Once the responding party raises a Rule 196.4 objection, either party may request a hearing at which the responding party must present evidence to support the objection. Tex.R. Civ. P. 193.4(a). To determine whether requested information is reasonably available in the ordinary course of business, the trial court may order discovery, such as requiring the responding party to sample or inspect the

---

**8.** Arthur argues that *Weekley Homes* is distinguishable from the current case because there, the supreme court addressed a trial court's order to give the opposing party's forensic examiner direct access to the hard drives, while this case involves production to a neutral party. However, Harris argues that Ball was, in fact, not a neutral party, and there is some confusion regarding Ball's role in this litigation, which we address later in this opinion. For purposes of our review of the trial court's order compelling Harris to produce his hard drives, it appears that Ball was in fact a forensic expert hired by and paid by Arthur's counsel, which is exactly the situation addressed in *Weekley Homes*. *See* 295 S.W.3d at 313. We conclude that *Weekley Homes* does apply here.

sources potentially containing information identified as not reasonably available.

*Id.* at 315. If the responding party fails to meet its burden of production, the trial court may order production subject to the discovery limitations imposed by Texas Rule of Civil Procedure 192.4. *Id.*

 The supreme court recognized that "[p]roviding access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be." *Id.* at 317. It stated:

As a threshold matter, the requesting party must show that the responding party has somehow defaulted in its obligation to search its records and produce the requested data. The requesting party should also show that the responding party's production "has been inadequate and that a search of the opponent's [electronic storage device] could recover deleted relevant materials." Courts have been reluctant to rely on mere skepticism or bare allegations that the responding party has failed to comply with its discovery duties. Even if the requesting party makes this threshold showing, courts should not permit the requesting party itself to access the opponent's storage device; rather, only a qualified expert should be afforded such access, and only when there is some indication that retrieval of the data sought is feasible. Due to the broad array of electronic information storage methodologies, the requesting party must become knowledgeable about the characteristics of the storage devices sought to be searched in order to demonstrate the feasibility of electronic retrieval in a particular case. And consistent with standard prohibitions against

"fishing expeditions," a court may not give the expert carte blanche authorization to sort through the responding party's electronic storage device. Instead, courts are advised to impose reasonable limits on production. Finally, federal courts have been more likely to order direct access to a responding party's electronic storage devices when there is some direct relationship between the electronic storage device and the claim itself.

*Id.* at 317–19 (internal citations omitted). *Weekley Homes* further held that even "[i]f the responding party meets its burden by demonstrating that retrieval and production of the requested information would be overly burdensome, the trial court may nevertheless order targeted production upon a showing by the requesting party that the benefits of ordering production outweigh the costs." *Id.* at 315 (citing TEX.R. CIV. P. 192.4).

We first address Arthur's argument that Harris waived any complaints arising under *Weekley Homes*.

### 1. Preservation

██ Arthur argues that Harris never made any arguments based on *Weekley Homes* before the trial court and, therefore, failed to preserve those complaints under Texas Rule of Appellate Procedure 33. She notes that *Weekley Homes* was decided on August 28, 2009, after the January 27 and the May 11 orders were signed. However, the transcript of the May 8, 2009 hearing clearly reflects that Harris's counsel did bring the *Weekley Homes* case to the attention of the trial court and that Harris reasserted similar arguments in his August 23, 2009 motion to reconsider, in which he argued, among other things, that the trial court had not followed the correct procedure and that this case was not appropriate to compel production of the actual hard drives.

We conclude that Harris's actions were sufficient to put the trial court on notice regarding his complaints as raised in this petition for writ of mandamus, and this issue was preserved. *See* TEX.R.APP. P. 33.1.

### 2. Production of Electronic Discovery

█ The trial court's January 27, 2009 order required Harris to produce "the relevant computer hard drives, external hard drives, jump drives, and other such repositories of electronic communications in [his] possession or control" for an "independent forensic examination." On February 3, 2009, Harris filed a motion to clarify this order, arguing that he should not have been included in the order to turn over hard drives for forensic examination. After a hearing on May 8, 2009, the trial court denied the motion to clarify. The trial court's May 11, 2009 order again ordered Harris to "produce the relevant computer hard drives, external hard drives and jump drives." Harris argues that the trial court erred in failing to follow the provisions of Rule 196.4, as described in *Weekley Homes*, in compelling him to produce his hard drives in the January 27 and May 11 orders. We agree.

Arthur's original requests for production specifically requested that Harris produce emails and other electronic communications in their native format.[9] *See* TEX.R. CIV. P. 196.4. After Harris filed objections, arguing, in part, that the requests were prohibitively expensive and unduly burdensome, Arthur filed a motion to compel Harris to comply with the discovery requests. In response, Harris produced 300 documents that were "responsive to the request and [were] reasonably available to the [him as the] responding party

in [his] ordinary course of business." *See id.* Arthur did not file any other motions to compel discovery from Harris, nor did Arthur ever serve Harris with a discovery request for his hard drives. Thus, Arthur failed to follow the first step required by Rule 196.4 and *Weekley Homes* by failing to make a specific request of the production of the hard drives themselves. *See id.* ("To obtain discovery of data or information that exists in electronic or magnetic form, the requesting party must specifically request production of electronic or magnetic data and specify the form in which the requesting party wants it produced."); *Weekley Homes*, 295 S.W.3d at 314 (holding that specific request is required "to ensure that requests for electronic information are clearly understood and disputes avoided"). The trial court also failed to follow any of the other provisions of Rule 196.4 as described in *Weekley Homes.* Nor, as stated above, did the trial court ever address Harris's objections to discovery. In fact, the record of the December 11, 2008 hearing does not contain any argument by Arthur's counsel that Harris's production as of the date of that hearing had been insufficient. Rather, Bonnie Stern, and not Harris, was the subject of the December 11 hearing, and, thus, here there is less than the assertion of "mere skepticism or bare allegations" that *Weekley Homes* had deemed insufficient to compel discovery of a hard drive or other electronic storage device. *See* 295 S.W.3d at 317–18, 320 (holding that "conclusory statements that the deleted emails it seeks 'must exist' and that deleted emails are in some cases recoverable is not enough to justify the highly intrusive method of discovery the trial court ordered, which af-

---

**9.** Harris argues that, while Arthur's requests for production did ask for emails, the requests did not specify the form in which the requesting party wanted the emails produced. This argument is not supported by the record. The instructions in the requests for production stated the form in which electronic files should be produced.

forded the forensic experts 'complete access to all data stored on [the Employees'] computers' ").

Following the trial court's January 27, 2009 order appointing a special master and forensic examination and requiring Harris to produce his hard drives and jump drives, Harris filed a motion to clarify the order, arguing that he was improperly ordered to produce the drives. In response, the trial court held a hearing on May 8, 2009 on Harris's motion to clarify, but it did not require Arthur to make any showing that Harris "has somehow defaulted in [his] obligation to search [his] records and produce the requested data" or that Harris's production had been "inadequate and that a search of [his electronic storage devices] could recover deleted relevant materials." *See id.* at 317. Nor did Arthur offer any evidence supporting her effort to obtain the hard drives or any evidence regarding which, if any, of Harris's electronic storage devices could be expected to contain discoverable documents at the hearing on Harris's motion to clarify the January 27 order. *See id.*

*Weekley Homes* also held that direct access to a responding party's electronic storage devices is more likely to be appropriate "when there is some direct relationship between the electronic storage device and the claim itself." *Id.* at 317–19 (recognizing that "ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be" and citing cases where employers sued former employees for misuse of company computers as instances where close relationship between claims and defendant's computer equipment justified production of computers themselves). Arthur made no such showing either at the December 11, 2008 hearing or at the

May 8, 2009 hearing or in any motion to compel. Moreover, even if we could conclude that the record supported a finding by the trial court that Harris's electronic storage devices could be expected to contain discoverable documents and that direct access to those devices was justified by some direct relationship between the storage devices and Arthur's claims, Arthur also failed to demonstrate that the "particularities of [the] electronic information storage methodology [would] allow retrieval of emails that have been deleted or overwritten, and what that retrieval [would] entail." *Id.* at 320. In sum, the record does not contain any evidence sufficient to satisfy the stringent standard for compelling production of Harris's electronic storage devices.

Finally, the trial court failed to consider whether the benefits of production to Arthur outweighed the burdens of the appointment of a special master and forensics expert to obtain the information sought when ordering the production of Harris's computer hard drive, external drives, and jump drives to the court-appointed Special Master. *See* Tex.R. Civ. P. 192.4 (requiring trial courts to weigh benefits of production against burdens imposed when requested information is not reasonably available in ordinary course of business). Thus, even if Arthur had shown that the documents sought from Harris were not privileged, were relevant to her claims against Harris, and could not have been reasonably obtained other than by ordering him to turn over his hard drives, and that there was a direct relationship between the hard drives and Arthur's claims, which she has not, she still would not be entitled to discovery of Harris's hard drives. *See id.*

We conclude that the trial court abused its discretion not only by compelling production of overly broad discovery without

addressing Harris's objections and without a motion to compel discovery from Harris before it, but also by issuing its even more invasive order that Harris produce his hard drives and by failing to require Arthur to make any showing that the benefit of the discovery she sought outweighed the burden and expense to Harris. Thus, we hold that the trial court abused its discretion by issuing the January 27, 2009 order compelling Harris to produce documents in response to Arthur's requests for production and to produce his hard drives and by issuing its May 11, 2009 order denying Harris's motion to clarify. *See Alford Chevrolet–Geo,* 997 S.W.2d at 181 (holding that although trial court has broad discretion to define scope of discovery, it can abuse its discretion by acting unreasonably).

We sustain Harris's first issue.

## C. Refusal to Apply Rule 193.3 on Treatment of Privileged Documents

In his third issue, Harris argues that the trial court abused its discretion by refusing to recognize the discovery procedures of Texas Rule of Civil Procedure 193.3 in the treatment of privileged documents and the creation of privilege logs. Rule 193.3 provides, "A party may preserve a privilege from written discovery in accordance with this subdivision." Tex.R. Civ. P. 193.3. It further provides that a party claiming that "material or information responsive to written discovery is privileged may withhold the privileged material or information from the response" and must provide a withholding statement describing the discovery being withheld, and it provides that the requesting party may then request that the "withholding party identify the information and material withheld." *Id.* Because we have already determined

that the trial court erred in the ways set forth above, this issue is moot.

We overrule Harris's third issue

## Appointment of Special Master

In his fourth and fifth issues, Harris argues that the trial court abused its discretion in appointing Craig Ball as a special master to conduct a forensic examination of Harris's computers without following Texas Rule of Civil Procedure 171. Arthur responds that Harris consented to the appointment of the special master, citing a series of emails and other negotiations between the parties that culminated in the filing of the Rule 11 agreement on January 20, 2009 and the trial court's order of January 27, 2009. Arthur also argues that Harris's objection to the special master is barred by laches because the special master was appointed on January 27, 2009, and Harris cooperated with the special master beginning May 14, 2009, but did not seek mandamus relief until September 4, 2009.

## A. Consent & Laches

■■■■ Parties may consent to the appointment of a special master. *See Simpson v. Canales,* 806 S.W.2d 802, 811 (Tex.1991) (orig. proceeding). However, the trial court's statements at the May 8, 2009 hearing that "[i]t wasn't an agreement" and that the trial court acted on her own authority in appointing Ball as special master defeat Arthur's argument that the parties consented to Ball's appointment as a special master. Moreover, the January 20, 2009 Rule 11 Agreement between Ogden and Arthur's counsel was an agreement to use Craig Ball as "the independent forensic examiner" as ordered by the trial court. It was not an agreement that a special master be appointed. And it was both executed and filed after Ogden had withdrawn as Harris's counsel.

Arthur also argues that delay alone is a valid ground for denying Harris's request for mandamus relief and that Harris fatally delayed in asserting his objections to the appointment of a special master. *See In re Xeller*, 6 S.W.3d 618, 624 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding) ("[J]udicial economy would have been better served if relators' [sic] had sought mandamus relief immediately after the appointment of the master."); *Owens-Corning Fiberglas Corp. v. Caldwell*, 830 S.W.2d 622, 625 (Tex.App.-Houston [1st Dist.] 1991, orig. proceeding) (holding that party may object to appointment of master either before participating in any proceeding before the master, or before parties, master, and trial court have acted in reliance on appointment).

The record, however, shows that Harris diligently sought to enforce his rights by filing a motion to clarify the January 27 order appointing Craig Ball as special master within days after it was signed by the trial court. That motion was not heard until May 8. In the hearing, Harris argued that the trial court had improperly included him in the order requiring him and several other defendants to produce their computers and electronic storage devices, and he raised the *Weekley Homes* case. Harris thus objected to the appointment of the special master before he complied with the May 11, 2009 order compelling him to produce three hard drives to the special master. Therefore, he did make a timely objection. *See Caldwell*, 830 S.W.2d at 625–26 (holding that party timely objected to appointment of special master and did not waive its right to object when it objected to appointment several days before it participated in proceedings before special master). Furthermore, the argument of delay does not prevent Harris from asserting that the trial court erred in failing to remove the special master on the grounds that the special master

has, since the production of the original three hard drives, behaved inappropriately and exceeded the scope of his authority or that he should not be compelled to produce any further electronic media to the special master.

We conclude that Harris has not waived his fourth and fifth issues.

## B. Trial Court's Appointment of Craig Ball

We now consider the authority of the trial court to compel Harris to submit matters to a special master. In his fourth issue, Harris argues that this was not an "exceptional case" and that there was no good cause for appointment of a master, as required by Rule 171, governing such appointments. Harris further argues that Craig Ball cannot serve as a neutral special master because he is under contract with, paid for, and indemnified by Arthur under the consulting agreement attached to the trial court's January 27 order. In his fifth issue, Harris argues that the trial court abused its discretion in appointing the special master to read attorney-client communications and to investigate and inquire into perceived discovery abuses. In the alternative, he argues that the trial court erred in failing to remove the special master for acting outside the limitations and specifications stated in the referral order by placing himself in an adversarial position, by investigating perceived discovery abuses, by exhibiting bias and lack of impartiality, and by making highly prejudicial statements.

Much of the confusion on this issue stems from the trial court's conflation of the roles of a forensic examiner and a special master. Texas Rule of Civil Procedure 171 is the exclusive authority for the appointment of masters in Texas state

courts. *Simpson,* 806 S.W.2d at 810. Rule 171 provides, in part:

> The court may, in exceptional cases, for good cause appoint a master in chancery, who shall be a citizen of this State, and not an attorney for either party to the action, nor related to either party, who shall perform all of the duties required of him by the court, and shall be under orders of the court, and have such power as the master of chancery has in a court of equity.

TEX.R. CIV. P. 171. Rule 171 also provides that "[t]he court shall award reasonable compensation to such master to be taxed as costs of suit." *Id.; TransAmerican Natural Gas Corp. v. Mancias,* 877 S.W.2d 840, 844 (Tex.App.-Corpus Christi 1994, orig. proceeding). A special master "has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties" as specified in the trial court order. TEX.R. CIV. P. 171.

"[A]ppointment of a master lies within the sound discretion of the trial court and should not be reversed except for a clear abuse of that discretion." *Simpson,* 806 S.W.2d at 811. However, it is "improper for ... an order [appointing a special master] to cast the master in the role of advocate rather than merely referee in the underlying proceeding." *TransAmerican,* 877 S.W.2d at 843 (citing *Caldwell,* 830 S.W.2d at 626 (noting impropriety of allowing master to require production of evidence regardless of whether opposing party has requested it)).

A forensic examiner in the context of electronic discovery has a much different role. Although we have found no rule or case that specifically defines "forensic examiner," a forensic examiner as contemplated in *Weekley Homes* is a computer expert whose sole purpose is to create forensic images of a particular electronic storage device and then to search the images for specified documents using a pre-designated list of search terms. *See Weekley Homes,* 295 S.W.3d at 313. A forensic expert as contemplated by Rule 196.4 and *Weekley Homes* is not given any authority to conduct hearings, to make recommendations regarding what evidence should be produced, or to require the production of any particular storage device or other item of evidence. In contrast to Rule 171's provision that the costs of a special master be taxed as a cost of suit, Rule 196.4 contemplates that "the requesting party pay the reasonable expenses of any extraordinary steps required to retrieve and produce the information." TEX.R. CIV. P. 196.4. In accordance with this rule, the requesting party in *Weekley Homes* clearly contemplated paying the expenses of its forensic experts if it had been permitted access to Weekley Homes' hard drives. *See Weekley Homes,* 295 S.W.3d at 313.

Here, Arthur sought appointment of Craig Ball as an independent forensic examiner and entered a Rule 11 agreement with Ogden that Ball be the independent forensic examiner appointed. The January 27, 2009 order, however, expressly appointed "Craig Ball of Austin, Texas as a Special Master, under the terms and conditions contained in the Consulting Agreement attached to this order and incorporated herein," an agreement which provided that Ball be hired by Arthur's counsel as an independent forensic examiner. Ball's role in the litigation is in some ways similar to that of a forensic examiner as contemplated by Rule 196.4 and *Weekley Homes.* Ball is paid by Arthur's counsel, and his role as envisioned in the trial court's January 27, 2009 order at least partially conforms to the role of a forensic

expert employed to create images of particular electronic storage devices and then search for specified documents using a predesignated list of search terms at the expense of the requesting party. We have already determined, however, that the discovery order to produce the hard drives was an abuse of discretion. Therefore, the question of Ball's ability to serve as a forensic expert to examine the hard drives on Arthur's behalf is moot.

■ However, the January 27 order also specifically conferred on Ball a number of powers extended to a special master not "related to either party" and appointed by the court "in exceptional cases" under Rule 171. *See* TEX.R. CIV. P. 171. The trial court referred to Ball as a special master and, from the time of his appointment, treated him as more than a forensic expert, allowing him to contact the parties and to make recommendations regarding the production of particular items. Thus, we next determine whether the trial court erred in the appointing Ball as a special master.

Rule 171 permits a trial court to appoint a special master "in exceptional cases, for good cause." TEX.R. CIV. P. 171. While the " 'exceptional cases/good cause' criterion of Rule 171 is not susceptible of precise definition," the supreme court has held that "this requirement cannot be met merely by showing that a case is complicated or time-consuming, or that the court is busy." *Simpson*, 806 S.W.2d at 811. However, courts have found sufficient justification for the appointment of a master to supervise "discovery questions which require extensive examination of highly technical and complex documents by a person having both a technical and a legal background." *TransAmerican*, 877 S.W.2d at 843 (holding that "the technical nature of the present case and the potential help which may be provided to the trial

court by a special master with geological training and expertise constitutes a sufficiently exceptional condition to justify the present appointment"); *see also Hourani v. Katzen*, 305 S.W.3d 239, 247–48 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) ("The highly technical nature of the case, which involves the feasibility of constructing a driveway or bridge along the edge of a lake without damaging the lake, and the assistance which may be provided to the trial court by a special master with engineering training and expertise constitutes a sufficiently exceptional condition to justify the present appointment.").

Here, the case is not of a "highly technical nature." The fact that production of some of the discovery sought by Arthur might require expert forensic examination of electronic media is not sufficient to show that this is an "exceptional case" requiring expertise in computer forensics. Electronic discovery is a common component of modern litigation, and its mere presence alone does not constitute a showing of good cause for appointing a special master. Neither party has argued that some specialized knowledge would be necessary to interpret any of the documents produced in this case.

Arthur also argues that appointment of a special master was necessary in this case because of her allegations that Harris did not produce all of the emails and other electronic documents in his possession that are responsive to her requests for production. However, Arthur made no showing to the trial court that Harris had failed to produce requested documents within the proper scope of discovery. As we have already discussed at length, Arthur did not even file a motion to compel discovery from Harris objecting to his production of documents before or after the December 11 hearing and filed no additional requests for production; nor did the trial court hear

or rule on Harris's objections to Arthur's requests. Furthermore, were Arthur to show that this was an exceptional case and that examination of Harris's hard drives was necessary for her to prove her case and not unduly burdensome to Harris, a forensic examination could be performed by a forensic examiner without the power and authority of a special master.

We conclude that the record reflects that this case does not meet the "exceptional case/good cause criterion of Rule 171." Therefore, we hold that the trial court abused its discretion in appointing Ball as a special master. *See Simpson,* 806 S.W.2d at 811. To the extent that the trial court's appointment of Ball was as a forensic examiner instead of as a master, we hold that the trial court abused its discretion by failing to comply with *Weekley Homes,* as we have explained above.

We sustain Harris's fourth and fifth issues.

▪ In his second issue, Harris argues that the trial court abused its discretion in issuing the August 28 order compelling him to respond to the special master's August 17, 2009 email. Because we have already determined that the court's appointment of Craig Ball as a forensic examiner and special master was an abuse of discretion, this issue is moot.

We overrule Harris's second issue.

### Conclusion

We conditionally grant the petition for writ of mandamus and direct the trial court to withdraw its discovery orders against Art Harris issued on January 27, 2009, May 11, 2009, and August 28, 2009. Any pending motions are dismissed as moot.