**AFFIRM; and Opinion Filed November 30, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00214-CV

**JENNIFER DEUEL STANTON AS CO-INDEPENDENT EXECUTOR OF THE ESTATE OF ARDYCE DEUEL-NASH, DECEASED, AND INDIVIDUALLY, Appellant**

**V.**

**BRITTANY GLOERSEN, Appellee**

**On Appeal from the Probate Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. PR-15-02502-1**

## MEMORANDUM OPINION

Before Justices Fillmore, Brown, and O'Neill[1]
Opinion by Justice Fillmore

Jennifer Deuel Stanton, individually and as co-independent executor of the Estate of Ardyce Deuel-Nash, brings this interlocutory appeal from the trial court's orders denying her motion to compel responses to discovery and granting Brittany Gloersen's special appearance. Stanton asserts the trial court erred by denying her motion to compel because (1) Gloersen waived her objections to the discovery requests by making voluminous boilerplate objections and failing to timely file a privilege log; (2) the crime-fraud exception in rule of evidence 503(d)(1) precludes Gloersen from asserting the attorney-client privilege as a basis for failing to fully respond to the discovery requests; (3) the trial court was confused about the scope and purpose of the limited discovery allowed to establish personal jurisdiction when a special appearance has

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned.

been filed; and (4) the attorney-client privilege belongs to the client, not the attorney, and Gloersen's client died without having the privilege invoked on his behalf. As to the special appearance, Stanton contends the trial court erred by determining Gloersen did not have sufficient minimum contacts with Texas to subject her to the trial court's jurisdiction. We affirm the trial court's orders.

## Background[2]

Ardyce Deuel-Nash was Stanton's mother. On August 5, 1998, Deuel-Nash placed her assets into the Deuel Living Trust. At some point, Deuel-Nash also executed a medical power of attorney, giving Stanton authority to make medical decisions on Deuel-Nash's behalf, and a durable special power of attorney, giving Stanton the authority to make certain financial decisions for Deuel-Nash.[3] In 2000, Deuel-Nash married Monte Nash[4] and moved to Orange City, Florida. Prior to the marriage, Deuel-Nash and Monte executed a premarital agreement.

On April 18, 2012, the 173rd Judicial District Court in Henderson County Texas, evidently at Stanton's request, entered an order declaring that the medical power of attorney, durable special power of attorney, and the Trust were valid.[5] The 173rd Judicial District Court also found that Deuel-Nash suffered from an illness or mental disability as of July 29, 2011, or at least on or after August 3, 2011.

Deuel-Nash suffered a stroke on December 18, 2012, and was admitted to a Florida hospital. Monte informed Stanton of her mother's stroke. On December 28, 2012, relying on the powers of attorney, Stanton transferred Deuel-Nash, against the medical advice of hospital personnel, to a facility in Dallas, Texas. Monte hired Gloersen, an attorney licensed to practice

---

[2] The facts are taken from the parties' pleadings and evidence relating to the special appearance and are largely undisputed.

[3] These documents are not in the appellate record.

[4] Because there is more than one person with the surname of "Nash," we will refer to individuals by first names where necessary for clarity.

[5] This order is not in the appellate record.

law in Florida, to assist in locating Deuel-Nash. Monte also hired a private investigator in Texas to assist in locating Deuel-Nash. To the extent they were acting as Monte's agents, Gloersen also considered Tom Nash and Pamela Nash Ward, Monte's children, to be her clients.

Beginning in late December 2012, Monte, Tom, Ward, and Gloersen contacted the Orange City Police Department, the Volusia County Sheriff's department, a Florida office of the Federal Bureau of Investigation, the Florida Department of Children and Families, the Dallas Police Department, the Texas Department of Family and Protective Services (the Department), and the Office of the Texas Attorney General seeking assistance in locating Deuel-Nash.[6] On January 12, 2013, Gloersen called Stanton, who lived in Texas, and left a message stating:

> Hi Miss Stanton this is Brittany Gloersen. I represent the Nash Family and just wanted to try to speak with you one last time. I understand you talked to our Private Investigator and hopefully you understand our position and that is if we don't hear back from you by Monday with a facility or place, or telephone number where Ms. Nash is, we will file a missing person, kidnapping and elder abuse charge with FBI, with local police department in Orange City, as well as in Dallas, Texas. Because you have given us no other choice if we can't deal with this amongst the family then that's our only opportunity to deal with it because until he knows where she is, she is a missing person.
>
> I understand you think this is harassment but I have tried to go thru your Attorney[;] he doesn't return phone calls or emails. I have tried to speak with you, you won't return phone calls or emails and I find it hard to believe that you think your Power of Attorney or Health Care Surrogate gives you the authority to kidnap someone. It doesn't. And if you had an Attorney they would explain that to you. It gives you the power to make medical decisions and finance decisions. It does not give you the power to remove her from her home. So if you want to continue down that line, then that hopefully will get you out of the trouble you are in. Until then, I suggest you try to work with us, because I don't think you want to have to explain that your Power of Attorney and Health Care Surrogate somehow give you the power to remove someone from their home and husband. Please give me a call . . . before Monday or otherwise be prepared to explain your side of the story to multiple different authorities.
>
> Thank you.

Gloersen left a similar message for Stanton's Texas attorney.

---

[6] The record does not reflect which individuals were involved in each communication.

On January 14, 2013, Gloersen submitted an online report to the Department, indicating that Stanton had removed Deuel-Nash from the hospital and would not reveal her location to Monte. Although the report in the record is not complete,[7] it indicates that Gloersen set out Monte's concerns over Deuel-Nash's removal from the hospital and that he was worried about her, but would consent to her staying in Texas if she was being properly cared for and was safe. In February 2013, Deuel-Nash died after a fall. Following her mother's death, Stanton was named co-independent executor of her mother's estate.

In October 2014, Gloersen, along with co-counsel, represented Nash in a lawsuit filed in Florida against Bank of America and Stanton. The allegations in the Florida litigation revolved around Bank of America's decision to freeze a bank account in Florida that Stanton contended contained money improperly transferred from the Trust.[8]

On July 16, 2015, Stanton filed this case against Monte, Tim, Ward, and Gloersen in the probate court where the administration of Deuel-Nash's estate was pending. Stanton asserted claims against Gloersen for conspiracy to commit breach of contract, based on the alleged breach of the premarital agreement; conspiracy to tortiously interfere with the administration of an estate, based on Monte's objection to Stanton being appointed co-independent executor of Deuel-Nash's estate and failure to turn over books, records, and personal property of the estate; and "conspiracy by defendants to malicious [sic] prosecution," based on "false reports and statements to the Texas Department of Adult Protective Services" by Gloersen and three complaints Ward filed with the State Bar of Texas against Stanton's attorney.[9]

---

[7] The substantive sentences in the complaint were apparently truncated when the online complaint was printed.

[8] The Florida court determined on December 7, 2015, that it did not have personal jurisdiction over Stanton.

[9] Stanton represents that Ward filed complaints against Stanton's attorney with the State Bar of Texas on March 20, 2014, April 24, 2014, and May 29, 2014, and the complaints were dismissed by the State Bar. These complaints are not in the appellate record.

Gloersen filed a special appearance, arguing (1) Stanton failed to plead sufficient jurisdictional facts, (2) she did not have sufficient contacts with Texas and her representation of Monte in Florida could not support the exercise of personal jurisdiction over her in Texas, and (3) asserting jurisdiction over her in Texas would offend traditional notions of fair play and substantial justice. Gloersen attached to her special appearance a sworn declaration denying that she lived, worked, or owned property in Texas, and setting out the facts surrounding her representation of Monte and the communications she had with individuals in Texas during that representation.

Stanton propounded interrogatories and requests for production on Gloersen. Unsatisfied with Gloersen's responses to the discovery requests, Stanton filed a motion to compel. Following a hearing, the trial court denied the motion to compel on November 23, 2015.

Stanton filed a first amended petition on November 25, 2015, adding claims against Gloersen for fraud and conspiracy to commit a crime. Stanton also filed a response to Gloersen's special appearance, relying on the report filed by Gloersen with the Department,[10] the communications with individuals in Texas set out in Gloersen's declaration,[11] and Gloersen's first amended response to interrogatory number 5[12] to support personal jurisdiction over Gloersen in Texas.

---

[10] Stanton also attached to her response to Gloersen's special appearance the first page of the report prepared by the Department following Gloersen's complaint. The trial court, however, indicated it would not consider whether the report was true in determining whether Gloersen was subject to jurisdiction in Texas.

[11] In her declaration, Gloersen stated that, in 2013, she "conducted telephone calls and correspondence with personnel from [the Department] regarding Monte Nash's search for" Deuel-Nash, submitted an online report to the Department regarding Deuel-Nash's disappearance, conducted several telephone calls with the Dallas Police Department regarding Deuel-Nash's location, left a voicemail for Stanton, spoke with Matthew Deuel, Stanton's brother, about Deuel-Nash's whereabouts, communicated with the private investigator hired by Monte, and spoke with Monte's Texas counsel regarding Deuel-Nash's estate.

[12] Interrogatory number five requested that Gloersen authenticate the substance of the voicemail message she left for Stanton as transcribed by Stanton. In her original response to interrogatory number five, Gloersen admitted leaving a message for Stanton requesting information about the location of Deuel-Nash, but stated she could not verify the exact wording of the message because she did not have a copy of the voicemail recording. Gloersen's amended response to the interrogatory is not in the record.

After a non-evidentiary hearing, the trial court granted Gloersen's special appearance. Stanton filed this interlocutory appeal of the trial court's order denying her motion to compel and the trial court's order granting the special appearance.

## Denial of Motion to Compel

We turn first to Stanton's second issue in which she challenges the trial court's denial of her motion to compel.[13] Stanton specifically argues (1) Gloersen waived her objections to Stanton's discovery requests by making voluminous boilerplate objections and failing to timely file a privilege log; (2) the crime-fraud exception to the attorney-client privilege precludes Gloersen from asserting the privilege as a basis for failing to fully respond to Stanton's discovery requests; (3) the trial court was confused about the scope and purpose of the limited discovery allowed to establish personal jurisdiction when a special appearance is filed; and (4) the attorney-client privilege belongs to the client, Monte died without invoking the privilege, and Gloersen may not invoke the privilege solely on her behalf.

### *Standard of Review*

We review a trial court's ruling on a motion to compel under an abuse-of-discretion standard. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009); *Simon v. Tudor Ins. Co.*, No. 05-12-00443-CV, 2014 WL 473239, at *7 (Tex. App.—Dallas Feb. 5, 2014, no pet.) (mem. op.). A trial court abuses its discretion when its decision was so arbitrary and

---

[13] An appellate court lacks jurisdiction over an appeal from an interlocutory order unless a statute permits such a proceeding. *Ogletree v. Matthews*, 262 S.W.3d 316, 319 n.1 (Tex. 2007); *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001). Section 51.014 of the civil practice and remedies code sets out our jurisdiction over interlocutory appeals. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (West Supp. 2016). Generally, the denial of a motion to compel discovery responses does not fall within the ambit of section 51.014. *See id.*; *Gonzales v. Crowley*, No. 07-14-00121-CV, 2014 WL 7447927, at *2 (Tex. App.—Amarillo Dec. 30, 2014, pet. denied) (per curiam) (mem. op.). However, parties have a right to engage in jurisdictional discovery relating to the filing of a special appearance, *see* TEX. R. CIV. P. 120a(3), and we have jurisdiction over an interlocutory appeal from a trial court's order granting a special appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7). It would be "illogical" not to allow the trial court's rulings on any discovery disputes to be raised in connection with the interlocutory appeal of the trial court's ruling on the special appearance. *See Exito Elec. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 306 (Tex. 2004) (per curiam); *Goodchild v. Bombardier-Rotax GMBH Motorenfabrik*, 979 S.W.2d 1, 5 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Delaying the appeal of such discovery rulings until the conclusion of the case could impede our ability to review in an interlocutory appeal the trial court's decision on a special appearance. Accordingly, we will address Stanton's arguments on the denial of the motion to compel, but only to the extent they can be construed as challenging the granting of the special appearance. *Goodchild*, 979 S.W.2d at 5.

unreasonable as to amount to a clear and prejudicial error of law. *Ford Motor Co.*, 279 S.W.3d at 661 (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004)).

*Applicable Facts*

Stanton propounded sixteen written interrogatories and eighteen requests for production on Gloersen. Gloersen responded to the discovery, raising general objections to all of the discovery requests and specific objections to some of the discovery requests. Subject to the objections, Gloersen responded to the interrogatories and requests for production. Stanton filed a motion to compel responses to discovery contending, as relevant to this appeal, that the crime-fraud exception precluded Gloersen from relying on the attorney-client and attorney work-product privileges to protect information about her communications with Monte, Ted, Ward, and counsel who had represented Monte in Texas,[14] Gloersen's "global boilerplate" objections were baseless, and by making numerous global objections, Gloersen waived any valid objections.

The only document admitted into evidence during the hearing on the motion to compel was an incomplete copy of the complaint Gloersen made to the Department. Stanton attempted to testify about the investigation performed by the Department following Gloersen's complaint. Gloersen repeatedly objected to the testimony as not relevant to the jurisdictional inquiry. Stanton's counsel argued he needed to prove Gloersen engaged in fraudulent or criminal activity to establish the crime-fraud exception in rule of evidence 503(d). The trial court repeatedly sustained Gloersen's objections and explained to Stanton's counsel:

> Sir, the Court is not in a position to make a determination as to whether or not there is a violation or any connection with 503, the exception to 503 at this point

---

[14] Generally, a client of an attorney has a privilege to refuse to disclose and to prevent any other person from disclosing "confidential communications made to facilitate the rendition of professional legal services to the client" between certain designated individuals. TEX. R. EVID. 503(b)(1); *see also In re Tex. Health Res.*, 472 S.W.3d 895, 901 (Tex. App.—Dallas 2015, orig. proceeding). However, the privilege does not apply "[i]f the lawyer's services were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." TEX. R. EVID. 503(d)(1). The crime-fraud exception applies with the same force to a claim that information is protected as attorney work-product. *See* TEX. R. CIV. P. 192.5(c)(5).

in time. I'm not going to make that determination today, all right? The issue before me is the discovery request that you have propounded

. . . .

All right. The Court has spent the better part of Saturday reading all of the discovery. I read most of the cases in here. And I am persuaded that the scope of discovery, I mean, the issue in a Special Appearance is whether or not this is the proper, this Court is the proper jurisdiction for the claims or complaints of the Plaintiff.

And so if this is a proper jurisdiction, then the Court is required to provide the rule of discovery. But I believe that if the Court has to determine whether or not this is the venue for the proper venue for you to assert your claims against the Defendant and until I determine that Ms. Gloersen is properly before this Court, I believe that the scope of discovery under that cases that I've read, she'd be limited to just what is necessary to determine whether or not a Special Appearance and I believe that discovery is very limited.

I think that subsequent to being, it being if the Special Appearance is denied, then I believe that a different set of rules applies. And so, with respect to all of the objections to the interrogatories and the request for production, I'm going to sustain those objections.

The trial court denied Stanton's motion to compel.

*Voluminous Boilerplate Objections*

Stanton first argues the trial court erred by denying the motion to compel because "Gloersen has waived her objections by making voluminous boilerplate objections and failing to timely file a privilege log. *See* TEX. R. CIV. P. 193.2(c), TEX. R. CIV. P. 196.3(c)." The Texas Rules of Appellate Procedure control the required contents and organization of an appellant's brief. *See* TEX. R. APP. P. 38.1; *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010). An appellant's brief must concisely state all issues or points presented for review and, among other things, must contain a clear concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). We may not speculate as to the substance of the specific issues asserted by an appellant and may not make a party's argument for her. *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas

2004, pet. denied); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.). And we have no duty to perform an independent review of the record and the applicable law to determine if the trial court erred. *Strange*, 126 S.W.3d at 678; *see also Lau v. Reeder*, No. 05-14-01459-CV, 2016 WL 4371813, at *2 (Tex. App.—Dallas Aug. 16, 2016, no pet. h.) (mem. op.). An appellant's failure to cite legal authority or provide substantive analysis of a legal issue results in waiver of the complaint. *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (observing that error may be waived by inadequate briefing); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.).

Stanton's one-sentence argument contains no substantive analysis of why Gloersen's objections directed toward all of Stanton's discovery requests were voluminous, "boilerplate," or did not have a valid legal basis or why the privilege log provided by Gloersen failed to comply with the rules of civil procedure. Accordingly, she has waived these complaints due to inadequate briefing.

### *Scope of Discovery in Special Appearance*

In her third argument, Stanton complains the trial court was confused about the scope and purpose of discovery allowed to establish personal jurisdiction when a special appearance is filed. Texas Rule of Civil Procedure 120a provides that any party may file a special appearance "for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amendable to process issued by the courts of this State." TEX. R. CIV. P. 120a(1). The party bringing the special appearance is entitled to have it heard and decided before any other pleading. *Id.* R. 120a(2). Although rule 120a specifically provides for jurisdictional discovery, *see* TEX. R. CIV. P. 120a(3), discovery "is limited to matters directly relevant to the issue" of jurisdiction. *In re Doe*, 444 S.W.3d 603, 608 (Tex. 2014) (orig. proceeding). Rule 120a(3) "authorizes discovery by a party prior to a ruling

on a special appearance only with respect to facts 'essential to justify his opposition' to the special appearance." *In re Stern*, 321 S.W.3d 828, 839 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding). A court should not reach the merits of the case when deciding a special appearance. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791–92 (Tex. 2005).

At the time of the hearing on the motion to compel, Stanton had asserted claims against Gloersen for conspiracy to commit breach of contract, conspiracy to tortiously interfere with the administration of Deuel-Nash's estate, and conspiracy to maliciously prosecute Stanton. With respect to a conspiracy theory of personal jurisdiction, the inquiry is restricted to whether the defendant herself "purposefully established minimum contacts such as would satisfy due process. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (orig. proceeding); *see also Stern*, 321 S.W.3d at 841. Accordingly, any communications Gloersen had outside of the state of Texas with non-residents of Texas are not relevant to the jurisdictional inquiry. *See Stern*, 321 S.W.3d at 841.

In her responses to discovery, Gloersen set out all communications she had with the Department, the Dallas Police Department, and the Henderson Police Department regarding Deuel-Nash's location. During the hearing on the motion to compel, the trial court repeatedly invited Stanton's counsel to address the discovery dispute and why Gloersen's responses were inadequate. The trial court also repeatedly informed Stanton's counsel that it would not rule on the issue of whether the crime-fraud exception applied to prevent Gloersen's assertion of the attorney-client privilege until after it ruled on the special appearance. Stanton's counsel declined to address any specific discovery request or to explain why information responsive to any request that Gloersen had withheld as privileged was relevant to the question of whether Gloersen is subject to personal jurisdiction in Texas.

On appeal, Stanton's argument in support of this complaint is no more specific:

> The trial court is of the opinion that until the trial court rules on the merits of the special appearance, and specifically rules that the special appearance is denied, then no discovery can take place to help determine whether the special appearance should be granted or denied. The Catch-22 of this situation is readily apparent. If counsel cannot conduct limited discovery to get documents produced showing contacts with the State of Texas and other parties in furtherance of tortuous [sic] acts until after the merits of the special appearance is determined, counsel will be hindered in producing evidencing showing the special appearance should be denied.

This one paragraph argument does not provide proper, meaningful analysis in support of Stanton's contentions. She neither cites to any authority, discusses any applicable law, nor applies the law to any facts. *See* TEX. R. APP. P. 38.1(i); *Strange*, 126 S.W.3d at 678; *see also Lau*, 2016 WL 4371813, at *2. Accordingly, due to inadequate briefing, Stanton has waived any argument that the trial court erred in its determination of the scope of allowable discovery when a special appearance has been filed. *See* TEX. R. APP. P. 38.1(i); *Fredonia State Bank*, 881 S.W.2d at 284; *Huey*, 200 S.W.3d at 854.

*Applicability of Crime-Fraud Exception to Attorney-Client Privilege*

In her second argument, Stanton asserts the trial court erred by denying the motion to compel because the crime-fraud exception to the attorney-client privilege is applicable, and Gloersen may not rely on the privilege to shield her communications with Monte, his agents, or other attorneys employed by him. The trial court did not rule on the applicability of the crime-fraud exception to the attorney-client privilege, indicating that, in its opinion, the applicability of that exception to the privilege could not be addressed until the question of its jurisdiction over Gloersen was resolved. Accordingly, Stanton's complaint is actually that the trial court erred by declining to address the merits of her contention that the crime-fraud exception applied to prevent Gloersen from asserting the attorney-client privilege. We have already concluded, however, that Stanton has waived on appeal any complaint the trial court erred in its

–11–

determination of the proper scope of discovery allowed under rule 120a(3). Accordingly, Stanton has also waived this argument.

*Death of Client*

Stanton finally argues the attorney-client privilege belonged to Monte, Monte passed away on December 16, 2015, without invoking the privilege, and Gloersen may not invoke the privilege solely on her behalf. We first note that nothing in the appellate record reflects that Monte has died, the date of his death, or that he never invoked the attorney-client privilege. Further, the attorney-client privilege generally survives the death of the client. *See* TEX. R. EVID. 503(c)(3) (deceased client's personal representative may claim privilege); *see also Swidler & Berlin v. United States*, 524 U.S. 399, 404–08 (1998). This argument, therefore, has no merit.

*Conclusion*

We conclude the trial court did not err by denying Stanton's motion to compel. We resolve Stanton's second issue against her.

**Special Appearance**

In her first issue, Stanton asserts the trial court erred by granting the special appearance because Gloersen had sufficient minimum contacts with Texas to subject her to personal jurisdiction in Texas.

*Standard of Review*

The question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013) (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence." *Id.* (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009)).

–12–

*Applicable Law*

Texas courts may exercise personal jurisdiction over a nonresident defendant "when the state's long-arm statute authorizes such jurisdiction and its exercise comports with due process." *Cornerstone Healthcare Grp. Holding, Inc. v Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016), *pet. for cert filed*, No. 16-522 (Oct. 17, 2016). The Texas long-arm statute provides, in relevant part, that in addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident commits a tort, in whole or in part, in this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2) (West 2015). "The broad 'doing business' language in Texas's long-arm statute allows the trial court's jurisdiction to 'reach as far as the federal constitutional requirements of due process will allow.'" *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010) (quoting *Moki Mac*, 221 S.W.3d at 575). "A state's exercise of jurisdiction comports with federal due process if the nonresident defendant has 'minimum contacts' with the state and the exercise of jurisdiction 'does not offend "traditional notions of fair play and substantial justice."'" *Cornerstone*, 493 S.W.3d at 70 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)).

The "touchstone" of a minimum-contacts analysis is purposeful availment. *Michiana*, 168 S.W.3d at 784. "A defendant establishes minimum contacts with a forum when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150 (quoting *Retamco*, 278 S.W.3d at 338). To constitute "purposeful availment," a defendant's contacts must be "purposefully directed," and must result from the defendant's own "efforts to avail itself of the forum." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 38 (Tex. 2016), *pet. for cert. filed* No. 16-481 (Oct. 7, 2016) (quoting *Moki Mac*, 221 S.W.3d at 576; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991)). When

–13–

determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors: only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; the contacts relied upon must be purposeful rather than random, isolated, or fortuitous; and the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction. *Cornerstone Healthcare Grp. Holding, Inc.*, 493 S.W.3d at 70–71. This analysis assesses the quality and nature of the contacts, not the quantity. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151. "[A] defendant will not be haled into a jurisdiction solely based on contacts that are 'random, isolated, or fortuitous,'" *Michiana*, 168 S.W.3d at 785 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)), or on the "unilateral activity of another party or a third person." *Guardian Royal Exch.*, 815 S.W.2d at 226 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "At its core, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being haled into court there." *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 152.

A nonresident's contacts with the forum can give rise to either general or specific personal jurisdiction. *Cornerstone*, 493 S.W.3d at 71. Stanton asserts only that Gloersen is subject to personal jurisdiction in Texas based on specific jurisdiction. When specific jurisdiction is alleged, we focus on the relationship among the defendant, the forum, and the litigation. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150. Specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's activity within the forum. *Id.* at 150, 156. "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 156. (quoting *Moki Mac*, 221 S.W.3d at 585). "[B]ut-for causation alone is insufficient." *Id.* at 157. "The operative facts are those on which the trial will focus to

–14–

prove the liability of the defendant who is challenging jurisdiction." *Mitchell v. Freese & Goss, PLLC*, No. 05-15-00868-CV, 2016 WL 3923924, at *3 (Tex. App.—Dallas July 15, 2016, pet. filed) (mem. op.) (quoting *Leonard v. Salinas Concrete, L.P.*, 470 S.W.3d 178, 188 (Tex. App.—Dallas 2015, no pet.)). We analyze specific jurisdiction on a claim-by-claim basis, unless we are shown that all claims arise from the same contacts with Texas. *TV Azteca*, 490 S.W.3d at 37; *Moncrief Oil*, 414 S.W.3d at 150–51.

In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 154 (citing *Retamco*, 278 S.W.3d at 338). "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Id.* at 154–55. This evaluation is undertaken in light of the following factors, when appropriate:

> (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate or international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations or states in furthering fundamental substantive social policies.

*Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010).

"Our special-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly*, 301 S.W.3d at 658; *see also* TEX. R. CIV. P. 120a. The plaintiff bears the initial burden to plead allegations sufficient to bring the nonresident defendant within the reach of Texas's long-arm statute. *Kelly*, 301 S.W.3d at 658. "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* The defendant can negate jurisdiction on either a factual or legal basis. *Id.* at 659. A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the

plaintiff's jurisdictional allegations. *Id.* "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id.* A defendant negates jurisdiction on a legal basis by showing that "even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.*

*Analysis*

To determine whether Stanton met her initial burden to plead sufficient allegations to invoke jurisdiction over Gloersen under the Texas long-arm statute, we look to the jurisdictional facts pleaded in the amended petition, as well as the jurisdictional facts alleged in her response to the special appearance. TEX. R. CIV. P. 120a(3); *Jani-King Franchising Inc. v. Falco Franchising SA*, No. 05-15-00335-CV, 2016 WL 2609314, at *4 (Tex. App.—Dallas May 5, 2016, no pet.) (mem. op.). In her first amended petition, Stanton asserted claims against Gloersen for conspiracy to commit breach of contract, conspiracy to tortiously interfere with the administration of an estate, conspiracy to maliciously prosecute Stanton, fraud, and conspiracy to commit a crime. Although Stanton did not make specific jurisdictional allegations against Gloersen, reading the amended petition as a whole indicates Stanton alleged Gloersen was subject to jurisdiction in Texas based on communications with various individuals and agencies in Texas during her attempts on behalf of Monte to locate Deuel-Nash and on the report she filed with the Department. The only information in the record regarding the substance of any of these communications is the alleged transcript of the message Gloersen left for Stanton, set out in

–16–

Stanton's petition, and the incomplete report filed by Gloersen with the Department that was attached to Stanton's response to Gloersen's special appearance.

We turn first to Stanton's claims that Gloersen conspired to tortiously interfere with the administration of an estate and to tortiously commit breach of contract. None of the jurisdictional allegations against Gloersen relate to either of these causes of action.[15] Where the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute, the defendant need only prove that she does not reside in Texas to negate jurisdiction. *Kelly*, 301 S.W.3d at 658–59; *Jani-King Franchising Inc.*, 2016 WL 2609314, at *4. In her declaration, Gloersen stated she is not a resident of Texas. Therefore, she met her burden to negate jurisdiction as to these two claims.

Stanton also asserted claims against Gloersen for conspiracy to maliciously prosecute Stanton, fraud, and conspiracy to commit a crime. These claims are premised on the allegations that Gloersen made false accusations against Stanton during her communications with government agencies in Texas. Relying on *Calder v. Jones*, 465 U.S. 783 (1984), Stanton argues Gloersen's communications were sufficient to support specific jurisdiction because the effects of her actions were felt in Texas.

*Calder* involved an article printed in a publication that was sold in California, among other forums. *Calder*, 465 U.S. at 785. The individual who was the subject of the article sued the publication, its local distributing company, the author of the article, and the editor of the article in California. *Id.* at 785–86. The author and editor, who lived in Florida and performed the work on the article in Florida, challenged the California court's personal jurisdiction over them. *Id.* The United States Supreme Court found that California had jurisdiction over the author and the editor because the article concerned the California activities of a California

_____

[15] Stanton's counsel conceded during oral argument that neither of these causes of action related to Gloersen's alleged conduct.

resident, was drawn from California sources, and the brunt of the harm was suffered in California. *Id.* at 788–89. Therefore, California was "the focal point both of the story and of the harm suffered." *Id.* at 789. Further, because the publication sold nearly twice as many copies in California than in any other state, the author and the editor "knew that the brunt of the injury would be felt" in the state. *Id.* at 789–90. Under these circumstances, the author and editor "must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article." *Id.* at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In *Keeton*, issued the same day as *Calder*, the Supreme Court clarified that where the defendant has "continuously and deliberately exploited the [forum state's] market," specific jurisdiction exists. *Keeton*, 465 U.S. at 781.

In *Walden*, the Court explained the "crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." 134 S. Ct. at 1123–24. The strength of the connection "was largely a function of the nature of the libel tort," that required the article to be communicated, read, and understood by third persons. *Id.* at 1124. The reputational injury caused by the article "would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens." *Id.* Because publication to third persons is a necessary element of libel, the alleged tort actually occurred in California. *Id.* The "effects" caused by the article— injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California, and not just to a plaintiff who lived there. *Id.*

The Texas Supreme Court, in applying *Calder* and *Keeton*, has "found unpersuasive" the argument that a defendant is subject to specific jurisdiction in Texas by "directing" a tort into Texas by allegedly making misrepresentations during a telephone call with a Texas resident. *Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 68 (Tex. 2016) (citing *Michiana*, 168 S.W.3d at

788). The court has explained "[t]here is a subtle yet crucial difference between directing a tort at an individual who happens to live in a particular state and directing a tort at that state." *TV Azteca*, 490 S.W.3d at 43. "Under *Calder*, 'mere injury to a forum resident is not a sufficient connection to the forum.' Instead, 'an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State,' and '[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 42 (quoting *Walden*, 134 S. Ct. at 1125)). "Mere knowledge that the 'brunt' of the alleged harm would be felt—or have effects— in the forum state is insufficient to confer specific jurisdiction." *Searcy*, 496 S.W.3d at 68 (citing *Walden*, 134 S. Ct. at 1123). "[T]he analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *TV Azteca*, 490 S.W.3d at 42 (quoting *Walden*, 134 S. Ct. at 1122); *see also Searcy*, 496 S.W.3d at 67–68 ("Thus, 'the mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum [s]tate does not suffice to authorize jurisdiction." (quoting *Walden*, 134 S. Ct. at 1126). "[T]he mere fact that [defendants] directed defamatory statements at a plaintiff who lives in and allegedly suffered injuries in Texas, without more, does not establish specific jurisdiction over [defendants]." *TV Azteca*, 490 S.W.3d at 43.

In this case, there is no evidence that Gloersen formed a substantial connection with Texas that would subject her to specific jurisdiction. Rather, Stanton alleges that Gloersen, a licensed attorney who lives and practices law in Florida, while representing Monte, who was a Florida resident, made false statements during her communications with individuals and agencies in Texas while attempting to locate Deuel-Nash, a Florida resident, who Stanton had unilaterally brought to Texas. *See Searcy*, 496 S.W.3d at 68 ("The happenstance of a plaintiff's connection to Texas, then, will not alone suffice to confer specific jurisdiction over a defendant who merely

–19–

deals with a Texas resident during the course of some unrelated endeavor."). Gloersen's communications with Texas individuals and agencies were not a purposeful effort to seek some benefit, advantage or profit with Texas.

The alleged conduct by Gloersen underlying Stanton's claims for fraud, conspiracy to maliciously prosecute Stanton, and conspiracy to commit a crime is, at best, a tort directed at a Texas resident, and is insufficient to show Gloersen purposefully availed herself of the privilege of conducting activities in Texas. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 157 (defendants' alleged tortious conduct in California against Texas resident was insufficient to confer specific jurisdiction over defendants as to plaintiff's tortious interference claims); *Michiana*, 168 S.W.3d at 790–92. We conclude Stanton failed to plead or prove facts that, if true, establish Gloersen is subject to personal jurisdiction in Texas based on specific jurisdiction. Accordingly, the trial court did not err by granting Gloersen's special appearance. We resolve Stanton's first issue against her.

### Conclusion

We affirm the trial court's orders granting Gloersen's special appearance and denying Stanton's motion to compel.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

160214F.P05

–20–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JENNIFER DEUEL STANTON AS CO-INDEPENDENT EXECUTOR OF THE ESTATE OF ARDYCE DEUEL-NASH, DECEASED, AND INDIVIDUALLY, Appellant

No. 05-16-00214-CV      V.

BRITTANY GLOERSON, Appellee

On Appeal from the Probate Court No. 1, Dallas County, Texas,
Trial Court Cause No. PR-15-02502-1.
Opinion delivered by Justice Fillmore, Justices Brown and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Brittany Gloersen recover her costs of this appeal from appellant Jennifer Deuel Stanton as Co-Independent Executor of the Estate of Ardyce Deuel-Nash, Deceased, and Individually.

Judgment entered this 30th day of November, 2016.

–21–